# IN THE COURT OF APPEALS OF IOWA

No. 18-0162
Filed April 4, 2018

**IN THE INTEREST OF K.F., A.L., and D.F.-L.,**
**Minor Children,**

**A.L., Father,**
    Appellant,

**A.C., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Louise M. Jacobs, District Associate Judge.

A mother and father separately appeal the juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Shireen L. Carter of Shireen Carter Law Office, P.L.C., Norwalk, for appellant father.

Ashley M. Sparks of Cooper, Goedicke, Reimer and Reese, P.C., West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

ConGarry D. Williams of Juvenile Public Defender's Office, Des Moines, guardian ad litem for minor children.

Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

A mother, Alexis, appeals the juvenile court order terminating her parental relationship with three children—nine-year-old D.F.-L., five-year-old A.L., and one-year-old K.F. Alexis claims she has corrected the circumstances leading to her convictions for child endangerment and the children can safely be returned to her care. She also maintains termination was not in the children's best interests because of their close bond with her. A father, Austyn, separately appeals the order as it relates to the two older children.[1] Austyn claims termination of his parental rights would be harmful to the children and the juvenile court could have established a guardianship with the paternal grandmother, who has cared for the children during the pendency of the child welfare case.

After independently assessing the record,[2] we reach the same conclusions as the juvenile court. If returned to the care of Alexis and Austyn, the children would likely face continued "chaos, drugs, and volatile situations." The termination of parental rights offers these children the best chance at a stable placement and ultimately adoption. Accordingly, we affirm the juvenile court's order.

---

[1] Austyn is not the father of K.F. No request was made to terminate the parental rights of K.F.'s father, who participated in services during the CINA case. The juvenile court decided K.F.'s permanent placement should be with his father.

[2] We review termination-of-parental-rights proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State must offer clear and convincing proof, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

## I.  Facts and Prior Proceedings

Alexis assaulted her daughter D.F.-L, then seven years old, in the spring of 2016, prompting the State to file a child-in-need-of-assistance (CINA) petition. D.F.-L. told authorities her mother regularly punched and kicked her in the head and body and several times threw her against a wall.  The Iowa Department of Human Services (DHS) removed both D.F.-L. and her younger sister, A.L., from their mother's care in May 2016.  Drug screens revealed both children had tetrahydrocannabinol, the active component of marijuana, in their systems.  A.L. also tested positive for cocaine.  At the time of removal, Alexis was pregnant with her third child.

In its CINA petition, the State alleged Austyn, the father of D.F.-L. and A.L., had a history of substance abuse and domestic violence and was not a suitable caregiver.  The DHS placed D.F.-L. and A.L. with Austyn's mother.

Alexis eventually pleaded guilty to two counts of child endangerment and one count of neglect of a dependent; in December 2016 she was placed on probation for eighteen months.  Alexis has been diagnosed with mental-health issues, including depression and post-traumatic stress disorder.  She engaged in therapy, but inconsistently, during the CINA case.  Alexis also has a history of marijuana and cocaine use.  At the termination hearing, she called her efforts at sobriety "a work in progress."

In February 2017, the juvenile court found the parents were making progress, Alexis was complying with the conditions of her probation, and both parents exercised almost daily visitation with the children—supervised by the grandmother.  But when K.F. was born later that month, he tested positive for

cocaine. Like his older sisters, he was adjudicated as a CINA and removed from Alexis's care.

In March 2017, the juvenile court issued a permanency order giving the parents six additional months to work toward reunification. The court noted the need for the parents to successfully address their substance-abuse issues and "demonstrate the ability to have good relationships with appropriate people instead of others who are making poor decisions."

The parents did not live up to the court's expectations. A troubling incident occurred at Alexis's home in June 2017. Alexis had been "hanging out" with her friend Andre, and he was dropping her off at home around 3:00a.m. According to Alexis, Austyn had been texting her all night and suddenly "came around the corner" of her house; Andre shot him. When asked about the incident at the termination hearing, Austyn acknowledged being shot but then invoked his Fifth Amendment privilege against self-incrimination and declined to answer further questions about the matter. The record showed Alexis was still associating with Andre in September 2017.

In December 2017, the State filed a petition to terminate the parental rights of Alexia and Austyn. The court held a hearing on the State's petition in early January 2018 and issued a decision granting termination later that month. The court relied on Iowa Code section 232.116(1)(d) (2018) to terminate Alexis's rights to all three children and Austyn's rights to D.F.-L. and A.L.; the court also cited paragraph (f) to terminate the rights of both parents to the two older children and paragraph (h) to terminate Alexis's rights to K.F. Both parents filed petitions on appeal.

## II. Analysis of Mother's Claims

Alexis divides her petition between two issues.  First, she contests the statutory grounds for termination.  *See* Iowa Code § 232.116(1).  Second, she argues terminating her parental relationship is not in the children's best interests and the closeness of the parent-child relationship should preclude termination. *See* Iowa Code § 232.116(2), (3).  We will address each of her claims in turn.

### A. Statutory Basis

Alexis argues the State did not present clear and convincing evidence to support any of the grounds relied upon by the district court for terminating her parental rights.  She claims

> The court cannot expect absolute perfection of parents with limited resources who start cases in very difficult positions and manage to make significant improvements, despite their very limited resources. The court in this case was insisting on absolute perfection for [Alexis]; however, the facts show that the mother had corrected the circumstances that lead to adjudication by engaging in all of these services.

When the termination order rests on more than one paragraph of section 232.116(1), we may affirm on any ground supported by the record.  *In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007).  Here, we find clear and convincing evidence under subsections (f)[3] and (h).[4]

---

[3] That provision requires proof of four elements: (1) the children are four years old or older; (2) they have been adjudicated CINA; (3) they have been removed from the parent's physical custody for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period in the home has been less than thirty days; and (4) clear and convincing evidence exists that at the present time the children cannot be returned to the custody of her parents as provided in section 232.102.

[4] That provision also requires proof of four elements: (1) the child is three years old or younger; (2) the child has been adjudicated CINA; (3) the child has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months and any trial period in the home has been less than thirty days; and (4) clear and convincing

Alexis challenges the fourth element of paragraphs (f) and (h), asserting "she was in a position at the time of termination where the children could be reunited with her." *See D.W.*, 791 N.W.2d at 707 (interpreting phrase "at the present time" to mean to mean "at the time of the termination hearing"). We cannot accept her assertion. The record provides a clear and convincing picture of parents who continue to battle substance abuse and volatile relationships. In her testimony, Alexis admitted to relapsing on drugs and needing more time to fully address her sobriety. She also continued to associate with individuals who engaged in violent acts—creating an environment too dangerous for young children. Contrary to Alexis's argument on appeal, the juvenile court did not insist on "absolute perfection" from this mother. Rather, the court appropriately looked to the best interests of the children and concluded Alexis could not safely resume custody at the present time. We reach the same conclusion.

### B.     Best Interests and Closeness of Relationship

Alexis next argues termination is not in the best interests of the children. *See* Iowa Code § 232.116(2). She points out that prior to court involvement she was the primary caregiver for the older two children. As for K.F., she contends because he is in the care of his biological father, there is no need to terminate Alexis's parental rights. *See* Iowa Code § 232.116(3)(a). She also suggests the juvenile court should have declined to terminate her parental rights because of her close bond with all three children. *See* Iowa Code § 232.116(3)(c).

---

evidence exists that the child cannot be returned to the custody of the parents as provided in section 232.102 at the present time.

The statutory best-interests provision requires us to give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). We also must decide if any factors in section 232.116(3) weigh against termination. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Section 232.116(3)(a) allows the court to refrain from terminating parental rights if "[a] relative has legal custody of the child." Section 232.116(3)(c) allows the court to decline termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

After reviewing the entire record, we are convinced the children's best interests, especially their safety, will be better served by staying in their current placements rather than returning to the custody of Alexis. The paternal grandmother has provided a secure home and obtained the necessary counseling for D.F.-L. and A.L. after their mother abused and neglected them. The record also reflects that K.F.'s father has fully participated in services and is an able caregiver. The permissive factors identified in section 232.116(3)(a) and (c) do not tilt the scales away from termination in this case. *See D.W.,* 791 N.W.2d at 709. Accordingly, we affirm the termination of Alexis's parental rights.

### III. Analysis of Father's Claims

Austyn argues the termination of his parental relationship with D.F.-L. and A.L. was not in his daughters' best interests and was unnecessary because they remain in the care of his mother. *See* Iowa Code § 232.116(2), (3)(a). Austyn insists "permanency can be achieved for these children with a guardianship in

paternal grandmother. Whether the children are adopted by paternal grandmother or she is their guardian she will still be the loving, stable, constant caregiver these children deserve."

Austyn has failed to meet his burden to show his mother's temporary custody of the children should preclude termination of his parental rights. *See In re A.S.,* 906 N.W.2d 467, 476–77 (Iowa 2018) (reiterating guardianship is not preferred over termination as legal alternative). The DHS social worker favored the option of termination over guardianship with the grandmother because it was a more definite outcome; the worker testified: "these kids have been out of the home almost twenty months and they deserve a permanent solution, and a guardianship can be dissolved." The grandmother did not join Austyn in requesting guardianship at the termination hearing. Under these circumstances, we decline to reverse the termination decision. *See id.* at 478.

**AFFIRMED ON BOTH APPEALS.**